IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. GJH-15-00017 |
| | : | |
| **GREGORY COOPER,** | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

.........oOo........

**GOVERNMENT'S REPLY TO DEFENDANT
COOPER'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its undersigned attorneys, respectfully submits this reply to defendant Gregory Cooper's Memorandum In Aid of Sentencing in anticipation of the sentencing hearing scheduled November 5, 2015. This response is limited to certain specific portions of the Defendant's memorandum, identified below.

As previously noted, at sentencing, the Government will recommend that a sentence of imprisonment in the middle of the calculated Guidelines range of 24 to 30 months, together with forfeiture in the amount of $25,931.76, is the appropriate disposition.

<u>Argument</u>

A. *Paragraph 5*

While not disputing the allegations set forth in the Statement of Facts (Attachment A of the Plea Agreement), defendant Gregory Cooper ("Cooper") argues that this was "not a traditional or planned bribery" scheme and that defendant Cooper "did not benefit financially in the traditional sense at all." Defendant's Sentencing Memorandum ("DSM") at 10. Defendant Cooper instead characterizes the bribe payments as "loans" between himself and his co-defendant Barbara Murphy

1

("Murphy") and as "gifts intended to foster a romantic relationship[]," in an attempt to minimize the conduct in which he engaged. DSM at 10-11. Defendant Cooper also claims he did not financially benefit from the relationship and was "in the hole a lot of money" because of debt he either incurred together with Murphy or incurred on Murphy's behalf. DSM at 11. This characterization is not accurate. Simply put, Defendant Cooper accepted $25,931.76 in bribe payments from Murphy. Whether or not he separately incurred debt as a result of his personal relationship with Murphy is of no significance. As Cooper admitted in the Statement of Facts, he assisted Murphy in improperly securing significant United States Postal Service contracts and, in exchange, received over $25,000 in bribes. Defendant Cooper's use of the bribes—whether to pay down debt, to pay cell phone bills, or otherwise—does not change their corrupt nature or lessen Cooper's culpability.

B. *Paragraph 7*

Cooper argues that $11,000 should be credited against the "loss" amount due to money he allegedly[1] deposited into Murphy's bank account. DSM at 17. This is not correct. Given Application Notes 3(A) and 3(E) under U.S.S.G. § 2B1.1 (which are the same in both the 2014 and 2015 U.S. Sentencing Guidelines), an argument that this $11,000 ought to be deducted from the total bribe amount—an amount that defendant Cooper swore to under oath at his plea hearing—can be advanced under the Guidelines only if defendant Cooper also takes the position (whether expressly or implicitly) that the money at issue was never a bribe in the first place. Specifically, Application Note 3(E)(i) states that the loss amount shall be reduced by "[t]he money returned, and the fair market value of the property returned and the services rendered by the defendant or other

---

1 Defendant attached as an exhibit (Ex. 14) an unauthenticated receipt for an $11,000 deposit into a Wachovia Bank account ending in 6984. The receipt does not indicate who made the deposit or to what it related. Defendant merely claims that it was intended to cover a "loan" to pay his daughter's college tuition and "any other debts to Ms. Murphy at the time[.]" DSM at 17.

persons acting jointly with the defendant, to the **victim** before the offense was detected." U.S.S.G. § 2B1.1, n.3(E)(i) (emphasis added). To be clear, the victim in this case is the United States, not Barbara Murphy. There is no way for defendant Cooper to argue that the $11,000 should be credited against the loss amount without also arguing that the $11,000 was not, in fact, a bribe that victimized the United States—in direct contravention of the agreed-upon Statement of Facts (and thereby violating the Plea Agreement, by failing to admit each and every item in the factual stipulation). The Government acknowledges that defendant Cooper may, without violating the Plea Agreement's provisions regarding acceptance of responsibility, present evidence to the Court at sentencing concerning any funds he claims to have provided to co-defendant Murphy, and the Court may consider that evidence as possible mitigation under 18 U.S.C. § 3553(a). However, the Application Notes are clear and unambiguous: because the victim in this case is the United States (and not defendant Cooper's co-defendant), crediting the $11,000 identified by defendant Cooper against the loss amount established by U.S.S.G. §§ 2C1.1(b)(2) and 2B1.1(b)(l)(B) is wholly improper. Since the Defendant has indicated that this argument is being advanced under 18 U.S.S.C § 3553(a) and not under the Guidelines, however, the Government agrees that the Defendant ought to receive full credit for acceptance of responsibility.

Defendant Cooper also contends that the Nordic Track fitness equipment (also part of the total bribe amount to which Cooper pled guilty) and other items were sent to defendant Cooper's residence for delivery to family members (presumably, family members of co-defendant Murphy). DSM at 13. Defendant Cooper thus implies that the Nordic Track was not a bribe, but rather merely an item that passed through his residence at the behest of co-defendant Murphy. The Government notes, however, that when defendant Cooper was questioned by Postal OIG agents on

October 16, 2012—over ten months after co-defendant Murphy ordered the equipment using her credit card—defendant Cooper admitted to having a Nordic Track in his house. This suggests that he was, in fact, the intended recipient of the equipment.

Furthermore, the assertion that Cooper might "receive a disparate guideline calculation" (DSM at 19) as compared with co-defendant Murphy is entirely misplaced. The Government has always maintained that it has no objection to the Court applying applicable Amendments to the 2015 U.S. Sentencing Guidelines (effective November 1, 2015). For all of the reasons previously discussed, however, the application of those Amended Guidelines would in no way affect the loss amount under §§ 2C1.1(b)(2) and 2B1.1(b)(l)(B) for either defendant Cooper or co-defendant Murphy.

C. *Paragraph 8*

Finally, the Government opposes defendant Cooper's request that the forfeiture amount of $25,931.76 be reduced or eliminated because he is in debt as a result of his personal relationship with co-defendant Murphy. Defendant Cooper's personal decision to incur debt in no way impacts the undisputed amount of money he received in bribes to steer contracts away from legitimate vendors and into the hands of co-defendant Murphy. Therefore, the United States is entitled to forfeiture in the full amount of proceeds derived from defendant Cooper's criminal conduct.

Conclusion

The Government respectfully requests that this Court consider the true nature and full extent of defendant Cooper's criminal conduct and the impact it has on the public confidence and trust and hold defendant Cooper accountable for the entire amount of bribes he received from co-defendant Murphy in exchange for awarding her lucrative federal contracts.

Respectfully submitted,

Raymond N. Hulser
Chief, Public Integrity Section
Criminal Division
Department of Justice

Rod J. Rosenstein
United States Attorney
District of Maryland

　/s/　*Mark J. Cipolletti*　

Mark J. Cipolletti
Trial Attorney
Public Integrity Section

Arun G. Rao
Assistant United States Attorney
District of Maryland

November 2, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2015, a copy of the foregoing Sentencing Memorandum was filed via ECF/CMF and thereby served electronically upon:

>Teresa Whalen, Esq.
>801 Wayne Avenue, Suite 400
>Silver Spring, MD 20910
>
>*Counsel for Gregory Cooper*

_____/s/_____
Mark J. Cipolletti
Trial Attorney
Public Integrity Section